# ORIGINAL

*aJM*

**GOODSILL ANDERSON QUINN & STIFEL**
A LIMITED LIABILITY LAW PARTNERSHIP LLP

LISA A. BAIL                6021-0
CARLY MINNER-COLE           8590-0
Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawai'i 96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880
lbail@goodsill.com
cminner@goodsill.com

Attorneys for Plaintiff
PETER K. TERUYA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 12 2010
at ___ o'clock and 30 min. ___ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PETER K. TERUYA, | CIVIL NO. CV 10 00282 JMS KSC |
| Plaintiff, | (Other) |
| vs. | |
| PRISCILLA D. SHAW; A & A SERVICES, LLC, a Hawai'i Limited Liability Company; WALTER CHUNG; CY TAXI LEASING, INC., a Hawai'i Corporation, dba KAPOLEI AUTO RECYCLING; JERRY GIORDANO, individually and dba GIORDANO'S PAINTING; IVORY TRANSPORT AND EQUIPMENT RENTALS, LLC, a Hawai'i Limited Liability Company; HAWK TRANSPORT SERVICES, LLC, a Hawaii Limited Liability Company; | COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |

FRANK COLUCCIO
CONSTRUCTION COMPANY, a
Washington Corporation; FREDRICK
W. JACOBS; LINDA L. NICHOLS;
DIANE FUJIKAMI; WELA
KALHOEFER; ALL ISLANDS, INC. a
Hawai'i Corporation dba CENTURY 21
ALL ISLANDS; JOHN DOES 1-20;
JANE DOES 1-20; and DOE ENTITIES
1-20,

                Defendants.

## COMPLAINT

Plaintiff PETER K. TERUYA ("Plaintiff" or "Teruya"), by and

through his attorneys, Goodsill Anderson Quinn & Stifel, a limited liability law

partnership, brings this action against Defendants PRISCILLA D. SHAW

("Shaw"); A & A SERVICES, LLC ("A & A"); WALTER CHUNG ("Chung");

CY TAXI LEASING, INC., doing business as KAPOLEI AUTO RECYCLING

("Kapolei Auto"); JERRY GIORDANO, individually and doing business as

GIORDANO'S PAINTING ("Giordano"); IVORY TRANSPORT AND

EQUIPMENT RENTALS, LLC ("Ivory Transport"); HAWK TRANSPORT

SERVICES, LLC ("Hawk Transport"); FRANK COLUCCIO CONSTRUCTION

COMPANY ("Coluccio"), FREDRICK W. JACOBS ("Jacobs"); LINDA L.

NICHOLS ("Nichols"); DIANE FUJIKAMI ("Fujikami"); WELA KALHOEFER

("Kalhoefer"); ALL ISLANDS, INC. doing business as CENTURY 21 ALL ISLANDS ("Century 21"); and JOHN DOES 1-20, JANE DOES 1-20, and DOE ENTITIES 1-20 (collectively referred to as "Doe Defendants") (collectively referred to as "Defendants"), as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); §§ 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607, 9613; 28 U.S.C. § 1367 (supplemental jurisdiction); and 28 U.S.C. § 2201 (declaratory relief).

2.      Venue is appropriate under 28 U.S.C. § 1391 and CERCLA § 113(b), 42 U.S.C. § 9613(b) because: (1) the majority of Defendants reside in this district, (2) a substantial part of the events or omissions giving rise to the claims herein occurred in this district, (3) the property that is the subject of the CERCLA claims asserted this action is located in this district, and (4) the releases or threatened releases of hazardous substances in or onto the property described herein occurred in this district.

## THE PARTIES

3.      Plaintiff **Peter K. Teruya** is a resident of the State of Hawai'i.

4.      Defendant **Priscilla D. Shaw** is a resident of the State of Hawai'i.

5.      Defendant **A & A Services, LLC** is a Hawai'i domestic limited liability company doing business in the State of Hawai'i, whose registered agent is Priscilla Shaw.

6.      Defendant **Walter Chung** is a resident of the State of Hawai'i.

7.      Defendant **CY Taxi Leasing, Inc.** is a Hawai'i corporation doing business in the State of Hawai'i under the trade name **Kapolei Auto Recycling**, whose registered agent is Walter Chung.

8.      Defendant **Jerry Giordano** is a resident of the State of Hawai'i, doing business under the trade name **Giordano Painting**.

9.      Defendant **Ivory Transport and Equipment Rentals, LLC** is a Hawai'i domestic limited liability company doing business in the State of Hawai'i.

10.     Defendant **Hawk Transport Services, LLC** is a Hawai'i domestic limited liability company doing business in the State of Hawai'i.

11.     Defendant **Frank Coluccio Construction Company** is a Washington corporation doing business in the State of Hawai'i.

12.     Defendant **Fredrick W. Jacobs** is a resident of the State of Pennsylvania.

13.    Defendant **Linda L. Nichols** is a resident of the State of Pennsylvania.

14.    Defendant **Diane Fujikami** is a resident of the State of Hawaiʻi, and a realtor with Century 21.

15.    Defendant **Wela Kalhoefer** is a resident of the State of Hawaiʻi and a realtor with Century 21.

16.    Defendant **All Islands, Inc.** is a Hawaii corporation doing business in the State of Hawaiʻi as **Century 21 All Islands**.

17.    The Defendants designated as John Does 1-20, Jane Does 1-20 and Doe Entities 1-20 are individuals, partnerships, corporations, associations and/or governmental or private entities who, though not currently discovered or known to Plaintiff despite diligent inquiry, may have contributed to or may be directly or vicariously responsible for the damages sustained by Plaintiff. All references in the Complaint to the named defendants or to Defendants shall include the Doe Defendants.

## INTRODUCTION

18.    Plaintiff is the fee simple owner of 10 acres of agricultural land located at 87-1161 Hakimo Road, Waianae, Hawai'i (the "Property"). The Property is presently unimproved agricultural land, and this lawsuit arises from substantial amounts of solid and hazardous waste on the Property.

19.    Plaintiff purchased the property through a dual agency listing by Century 21. Century 21 negligently supervised the cleanup of debris on the property, and failed to advise Plaintiff that he should conduct a Phase I environmental site assessment before he purchased it. Sellers represented there were no environmental hazards, no contaminated soil and no filled land. Yet when the lessee, Shaw, began farming the property, she discovered car parts, scrap metal and construction debris.

20.    Although her lease only allowed Shaw to farm certain crops, Shaw used the Property as a junkyard and for various recycling and other operations that caused contamination. Also in violation of her lease, Shaw subleased portions of the Property to other businesses who caused contamination from sandblasting and automobile recycling operations, and who used the Property for dumping additional solid and hazardous waste.

21.    The United States Environmental Protection Agency ("EPA") has spent more than $650,000 in response actions at the Property which it intends

to recover from Plaintiff. Even though Plaintiff undertook an extensive cleanup of solid waste on the Property, the State of Hawaii Department of Health ("DOH") has identified further actions with regard to solid waste investigation and removal that have not yet been completed.

## THE PROPERTY PURCHASE

22.     Kalhoefer and Century 21 represented Plaintiff in connection with his purchase of the Property.

23.     Plaintiff purchased the Property from Jacobs and Nichols (collectively hereinafter the "Sellers"), who were represented by Fujikami and Century 21.

24.     On or about September 2, 2004, the Sellers completed a "Real Property Disclosure Statement – Vacant Land" (hereinafter the "Disclosure") regarding the Property.

25.     The Disclosure states that there are no substances, materials or products which may be an environmental hazard, there is no contaminated soil and there is no filled land on the Property.

26.     On September 9, 2004, the DOH sent the Sellers a Warning Letter to clean up tires, construction and demolition waste, metals and derelict vehicles from the Property.

27.     On or about September 10, 2004, Plaintiff made an offer to purchase the Property from the Sellers and on September 11, 2004, the Sellers accepted Plaintiff's offer.

28.     On or about September 22, 2004, Plaintiff received the Disclosure, which indicated that there were no environmental hazards or filled land on the Property.

29.     No amended or additional disclosures were provided to Plaintiff at any time after September 22, 2004.

30.     Dump Runs was retained by Sellers and their agents Fujikami and Century 21, to clean up the Property.

31.     The cleanup work started on October 12, 2004 and was allegedly completed sometime prior to December 9, 2004, under the authority and supervision of Sellers and their agents Fujikami, Century 21, and Dump Runs.

32.     Neither Sellers nor their agents disclosed that there was buried solid and/or hazardous waste on the Property.

33.     Sellers and their agents failed to complete a cleanup of all solid and/or hazardous waste on the Property.

34.     Kalhoefer and Century 21 failed to advise Plaintiff to conduct a Phase I environmental site assessment ("ESA") before he purchased the Property.

35.     If a Phase I environmental site assessment had been conducted before Plaintiff purchased the Property, the presence of solid and/or hazardous waste would likely have been.

36.     Plaintiff acquired the Property on October 19, 2004, but never occupied the Property, and the Property remained vacant from the date he purchased it until April 1, 2005.

## THE LEASE AND UNAUTHORIZED SUBLEASES

37.     On April 1, 2005, Shaw acquired a twenty (20) year Farm Lease (the "Lease") of the Property.

38.     Shaw discovered solid waste including, but not limited to, car parts, scrap metal and construction debris on the Property.

39.     Paragraph 3 of the Lease states, "[t]he Property shall be used only for the purposes of planting, growing and harvesting . . . crops."

40.     Shaw and/or A & A used the Property for various operations in violation of paragraph 3 of the Lease, including but not limited to recycling food, glass and metal, burning waste, and as a junkyard.

41.     Paragraph 12 of the Lease states, "[l]essee shall not, without Lessor's prior written consent . . . sublet all or part of the Property."

42. Upon information and belief, in violation of paragraph 12 of the Lease, Shaw sublet portions of the Property to A & A, Chung, Kapolei Auto, Giordano and Ivory Transport.

43. Upon information and belief, thereafter, Shaw allowed A & A, Chung, Kapolei Auto, Giordano and Ivory Transport to occupy and use portions of the Property for non-agricultural purposes, in violation of paragraph 3 of the Lease.

44. Upon information and belief, Shaw received rental income or equivalent value from A & A, Chung, Kapolei Auto, Giordano and Ivory Transport.

45. Paragraph 6 of the Lease states, "[l]essee shall not (a) commit or permit the commission by others of any waste on the Property, and/or (b) maintain, commit or permit the maintenance or commission of any nuisance."

46. Paragraph 8 of the Lease states, "[l]essee shall at all time keep the Property in a safe, clean and sanitary condition and observe and perform all laws, ordinance, code, rules and regulations, including those regulating health, sanitation, safety, hazardous materials and the environment . . .."

47. Upon information and belief, A & A, Chung, Kapolei Auto, Giordano and Ivory Transport caused the generation, release and/or discharge of solid and/or hazardous waste in and on the Property in violation of paragraphs 6 and 8 of the Lease.

48.     Shaw's failure to remediate or remove the solid and/or hazardous waste generated and discharged in and on the Property by A & A, Chung, Kapolei Auto, Giordano and Ivory Transport is a violation of paragraph 3 of the Lease.

49.     Upon information and belief, on or before June 12, 2008, Ivory Transport was subcontracted by Hawk Transport and/or Coluccio to transport solid and/or hazardous waste to the Property from Kapiolani Boulevard road work being done by Coluccio.

50.     Upon information and belief, on or before June 12, 2008, Ivory Transport, Hawk Transport, and or Coluccio, with permission from Shaw, transported solid and/or hazardous waste to the Property from Kapiolani Boulevard road work being done by Coluccio.

51.     Shaw's permission to Ivory Transport, Hawk Transport and/or Coluccio to dump solid and/or hazardous waste on the Property was a violation of the terms of paragraphs 6 and 8 of the Lease.

52.     Shaw's failure to remove and/or remediate the solid and/or hazardous waste dumped on the Property by Ivory Transport, Hawk Transport and/or Coluccio is in violation of paragraph 3 of the Lease.

53.     Plaintiff did not receive notice of or consent to the subletting of a portion or portions of the Property under the Lease, nor did he receive notice of

or consent to the dumping of solid and/or hazardous waste on the Property under the Lease.

54.     Plaintiff did not receive notice of or any money or other economic consideration for the unauthorized subletting of a portion or portions of the Property under the Lease.

55.     Upon information and belief, Shaw, A & A, Chung, Kapolei Auto, Giordano, and Ivory Transport operated an open dump and/or solid waste management system in violation of Haw. Rev. Stat. 342H-30(a) and (b).

56.     Upon information and belief, Shaw, A & A, Chung, Kapolei Auto, Giordano, Ivory Transport and Coluccio discarded, disposed of, deposited, discharged, or dumped solid waste, or by contract or otherwise arranged directly or indirectly for the disposal of solid waste in an amount equal to or greater than one cubic yard in volume at the Property in violation of Haw. Rev. Stat. 342H-30(c).

57.     Plaintiff did not receive any notice of or any money or other economic consideration for the unauthorized dumping of solid and/or hazardous waste on the Property under the Lease.

58.     In 2008, Shaw failed to pay the rent for the months of June, August, September, October, November and December.  Shaw currently owes a minimum of $7,812.45 in unpaid rent and late fees.

59.   In 2009, Shaw paid no rent for her possession and/or occupation of the Property.

60.   Shaw's default under the terms of the Lease caused the termination of the Lease.

61.   Shaw, and those claiming by, through and under her, remained in possession of the Property after termination of the Lease, without right.

## EPA AND DOH PROCEEDINGS

62.   Beginning on May 13, 2008, the EPA and the DOH conducted a joint site inspection of the Property as part of a joint criminal investigation conducted by the EPA's Criminal Investigation Division, the Federal Bureau of Investigation, Immigration Customs Enfocement, and the Drug Enforcement Agency.

63.   During the site inspection, EPA and DOH found numerous containers of waste oil, paints, solvents and greases abandoned throughout the Property.  The contents of some of these containers were hazardous waste.

64.   EPA and DOH found numerous lead acid batteries and associated wastes on the Property.

65.   EPA and DOH found numerous open burn pits on the Property.

66.     On May 21, 2008, the Clean Water Branch (CWB) of the State of Hawaiʻi Department of Health conducted a follow up site inspection of the Property.

67.     DOH observed on the Property: 5-gallon buckets and drums throughout the Property; a graded and filled area that appeared to have been used for industrial activities such as commercial sandblasting and painting; a substantial quantity of used sand blast grit on the graded and filled area; piles of ash and burnt metal debris; a significant amount of fill material which appeared to have been filled with a mixture of construction and demolition debris; and a metal scrapping and salvaging operation.

68.     On July 7, 2008, DOH's Solid and Hazardous Waste Branch issued a warning letter addressed to Plaintiff Teruya, Shaw, Chung, and Kapolei Auto, regarding the accumulation and burial of solid waste on the Property.

69.     On July 31, 2008, DOH's Solid and Hazardous Waste Branch issued a Notification of Filing of Complaint and Order addressed to Plaintiff Teruya and Shaw and A & A for violation of hazardous waste rules.

70.     On July 31, 2008, DOH's Solid and Hazardous Waste Branch issued a second Notification of Filing of Complaint and Order addressed to Plaintiff Chung and Kapolei Auto for violation of hazardous waste rules.

71.     On September 9, 2008, DOH's Solid and Hazardous Waste Branch issued a third Notification of Filing of Complaint and Order to Giordano for violation of hazardous waste rules.

72.     From September 26 to October 2, 2008, EPA collected and analyzed a total of 1,207 soil samples from the Property which documented the presence of hazardous substances.

73.     On September 26, 2008, EPA issued a CERCLA Section 106 Unilateral Administrative Order 2008-27 ("UAO") addressed to Shaw and Plaintiff to prevent or mitigate the imminent and substantial endangerment to the public health or welfare or the environment posed by the conditions at the Property.

74.     By letter dated October 20, 2008, Plaintiff responded to EPA's UAO.

75.     Plaintiff is informed and believes that Shaw failed to respond to the DOH's July 7, 2008 warning letter, DOH's July 31, 2008 notification letter and EPA's September 26, 2008 UAO.

76.     EPA took control of the Property in February and March 2009 for its removal action.

77.     During the removal action, EPA removed more than 1,000 tons of solid and hazardous wastes, lead acid batteries and contaminated soil.

78.    EPA incurred total site costs of $650,667.87 as of July 31, 2009.

79.    On or around June 16, 2009, EPA perfected a lien on the Property under Section 107(l) of CERCLA.

80.    On May 27, 2009, the DOH issued a Notice of Violation and Order (NOVO) to Plaintiff regarding the Property.

81.    The NOVO stated that implementation of corrective actions regarding solid waste non-compliance issues on the Property was needed.

82.    In September and October 2009, Plaintiff conducted a surface debris cleanup and removal action to address the non-compliance identified by DOH.

83.    On February 2, 2010, the DOH Hearings Officer granted Plaintiff's motion to dismiss the NOVO because of DOH's failure to properly serve the NOVO.

84.    On March 15, 2010, DOH prepared a case summary which concluded that "solid waste may still be buried at the site" and that "contaminated soil remains on the site" and that outlined the actions that needed to be taken by Plaintiff in response.

## COUNT I
## VIOLATION OF THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980 ("CERCLA"), 42 U.S.C. §§ 9601, 9604, 9606, 9607, 9608, 9609, 9613 et. seq. (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

85.     Plaintiff realleges and incorporates herein as if fully set forth its allegations in paragraphs 1 through 84 of this Complaint.

86.     Defendants Sellers, Shaw, A&A, Chung, Kapolei Auto, Giordano and Ivory Transport (collectively the "Defendant Owner/Operators") were persons who either released hazardous substances at the Property or who, at the time of disposal of any hazardous substance, owned or operated any facility at which such hazardous substances were disposed of, and are therefore "owners" or "operators" for purposes of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et. seq.* ("CERCLA").

87.     Defendants Ivory Transport and Hawk Transport ("Defendant Transporters") were persons who accepted hazardous substances for transport to a disposal site on the Property from which there was a release which caused the incurrence of response costs, and are therefore "transporters" within the meaning of CERCLA.

88.     Defendant Coluccio a person who by contract, agreement or otherwise arranged with a transporter for transport for disposal of hazardous

substances owned or possessed by Coluccio for disposal at the Property and is a "generator" within the meaning of CERCLA.

89.     The Defendant Owner/Operators, Defendant Transporters and Coluccio are "Potentially Responsible Parties" ("PRPs") under CERCLA.

90.     As stated above, the PRPs by their conduct did willfully, knowingly or recklessly fail to comply with CERCLA

91.     As a result, Plaintiff has sustained damages.

92.     The PRPs are liable for the costs of removal or remedial action under 42 U.S.C. § 9607(a)(4)(A).

93.     The PRPs are liable for any other necessary costs of response incurred by any other person, including Plaintiff under 42 U.S.C. § 9607(a)(4)(B).

94.     The PRPs are liable for injury to, destruction of, or loss of natural resources, including the reasonable cost of assessing such injury to, destruction of, or loss resulting from such release under 42 U.S.C. § 9607(a)(4)(C).

95.     The PRPs are liable for any health assessments or health effects study carried under 42 U.S.C. § 9604(i).

96.     Plaintiff is entitled to relief and the PRPs are liable in the form of reimbursement, cost recovery, civil penalties, contribution and such other remedies as are provided under 42 U.S.C. §§ 9601, 9604, 9606, 9607, 9608, 9609 and 9613.

## COUNT II
## DECLARATORY RELIEF UNDER CERCLA
### 28 U.S.C. § 2201; 42 U.S.C. § 9601, *et. seq.*
#### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei
#### Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

97.    Plaintiff realleges and incorporates herein as if fully set forth its allegations in paragraphs 1 through 96 of this Complaint.

98.    This case is brought to define the scope of liability, the damages, and the nature of remediation which the PRPs owe to Plaintiff for actions taken by PRPs with regard to hazardous substances on the Property.

99.    Plaintiff is entitled to a Declaratory Judgment, under 28 U.S.C. § 2201, that the PRPs are liable under CERCLA 42 U.S.C. §§ 9601, 9606, 9607 and 9613 for damages, for remediation, for cost recovery and for contribution resulting from the PRPs' conduct.

## COUNT III
## REIMBURSEMENT AND COST RECOVERY UNDER CERCLA
### 42 U.S.C. §§ 9606 AND 9607
#### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei
#### Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

100.    Plaintiff realleges and incorporates herein as if fully set forth its allegations in paragraphs 1 through 99 of this Complaint.

101.    The PRPs are jointly and severally liable to Plaintiff for reimbursement and cost recovery as provided under CERCLA 42 U.S.C. §§ 9606 and 9607, *et. seq.*

## COUNT IV
## CONTRIBUTION UNDER CERCLA 42 U.S.C. § 9613 *et. seq.*
### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

102.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 101 of this Complaint.

103.   The PRPs are liable to Plaintiff for contribution as provided under CERCLA, 42 U.S.C. § 9613 *et. seq.*

## COUNT V
## VIOLATION OF HAWAI'I ENVIRONMENTAL RESPONSE LAW ("HERL")
## HAW. REV. STAT. CHAPTER §§ 128D-1, 5, 6 and 8
### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

104.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 103 of this Complaint.

105.   Defendant Owner/Operators were persons who either released hazardous substances at the Property or who, at the time of disposal of any hazardous substance, owned or operated any facility at which such hazardous substances were disposed of, and are therefore "owners" or "operators" for purposes of the Hawai'i Environmental Response Law, Haw. Rev. Stat. Chapter 128D ("HERL").

106.   Defendant Transporters were persons who accepted hazardous substances for transport to a disposal site on the Property from which there was a

release which caused the incurrence of response costs, and are therefore "transporters" within the meaning of HERL.

107.   Coluccio by contract, agreement or otherwise arranged with a transporter for transport for disposal of hazardous substances owned or possessed by Coluccio for disposal at the Property and is a "generator" within the meaning of HERL.

108.   The Defendant Owner/Operators, Defendant Transporters and Coluccio are "Potentially Responsible Parties" ("PRPs") under HERL.

109.   As stated above, the PRPs by their conduct did willfully, knowingly or recklessly fail to comply with the provisions of the Haw. Rev. Chapter 128D-8(b).

110.   As a result, Plaintiff has sustained damages.

111.   The PRPs are jointly and severally liable to Plaintiff for all costs of removal and remedial actions, the costs of any health assessments or health effects pursuant to Haw. Rev. Stat. § 128D-6.

112.   The PRPs are jointly and severally liable for injury to, destruction of or loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss resulting from such releases under Haw. Rev. Stat. § 128D-6.

113.   The PRPs are jointly and severally liable for any health assessments or health effects study carried under Haw. Rev. Stat. Chapter 128D.

114.   The PRPs are jointly and severally liable for any other necessary costs of response incurred by any other person, including the Plaintiff under Haw. Rev. Stat. § 128D-5, 6, 8 and 9.

## COUNT VI
## INDEMNITY AND CONTRIBUTION UNDER
## HAW. REV. STAT. § 128D-6 & -18
### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei
### Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

115.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 114 of this Complaint.

116.   The PRPs are liable to Plaintiff for reimbursement, indemnity, and contribution under Haw. Rev. Stat. § 128D-18 for damages, for remediation, and for injunctive relief for their conduct as set forth above.

## COUNT VII
## DECLARATORY RELIEF UNDER HAW. REV. STAT. CHAPTER 128D
### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei
### Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

117.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 116 of this Complaint.

118.   Plaintiff is entitled to a declaratory judgment that the PRPs are liable under Haw. Rev. Stat. § 128D for damages and for remediation for their conduct as set forth above.

## COUNT VIII
## BREACH OF LEASE
### (as to Defendant Shaw)

119.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 118 of this Complaint.

120.   Shaw by her actions as stated above in:  (a) failing to pay rent and other charges; (b) subletting; (c) permitting non-agricultural activities; (d) failing to comply with environmental laws and regulations; (e) releasing hazardous substances on the Property; (f) disposing of solid waste on the Property; and (g) failing to clean up the Property did breach the terms, conditions, obligations covenants, and agreements set forth in the Lease.

121.   Each of the breaches is material and substantially affects Plaintiff's legal rights, interests, privileges and duties.

122.   As a result, Plaintiff has sustained damages.

## COUNT IX
## INDEMNIFICATION UNDER LEASE
### (as to Defendant Shaw)

123.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 122 of this Complaint.

124. Shaw is responsible under the Lease, including but not limited to paragraphs 6 and 8, for all costs of remediating the Property including attorneys' fees, in order to bring it compliance with all federal, state and county laws and regulations.

125. Under the Lease, including but not limited to paragraphs 6 and 8, Shaw is also obligated to reimburse and indemnify Plaintiff for all costs, fees and expenses that Plaintiff expended to comply with the federal, state and county laws and regulations and enforce the covenants under the Lease.

126. Plaintiff has incurred expenses in enforcing the covenants under the Lease and bringing the Property into compliance with applicable laws. Defendant Shaw is liable for such expenses, including attorneys' fees, in an amount to be proven at trial.

## COUNT X
## VOLUNTARY WASTE
### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

127. Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 126 of this Complaint.

128. The PRPs transferred to, disposed of and released substances on the Property that were harmful, hazardous, injurious to persons or property and controlled and/or regulated ("Harmful Substances").

129.    The PRPs' use of Harmful Substances on or about the Property wrongfully destroyed, altered, misused, damaged, and/or neglected the Property.

130.    The PRPs did not exercise the reasonable care of prudent persons in their conduct regarding the Harmful Substances.

131.    The PRPs did not comply with required federal, state, and/or county laws, rules or standards in their use or disposal of Harmful Substances.

132.    The PRPs' wrongful conduct was done without Plaintiff's knowledge, authorization or permission.

133.    The PRPs' conduct has been prejudicial to Plaintiff.

134.    The Property has been diminished in value as a result of the PRPs' conduct.

135.    Plaintiff has been and continues to be damaged in an amount to be proven at trial, including but not limited to the diminution in the value of the Property and attorneys' fees and other expenses.

136.    The actions of the PRPs and their subordinates, employees, agents and all persons acting in concert with and/or by them with respect to their use or disposal of Harmful Substances on the Property were willful, wanton or were undertaken with an entire want of care that would raise the presumption of a conscious indifference to the consequences.  Plaintiff is thereby entitled to recover punitive damages.

## COUNT XI
## PERMISSIVE WASTE
### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei
### Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

137.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 136 of this Complaint.

138.   The PRPs by their conduct did neglect, omit, or permit actions to be taken in the Property that damaged or constituted waste and such conduct was wrongful.

139.   The PRPs did not exercise the ordinary and reasonable care of prudent persons for the preservation and protection of the Property.

140.   The PRPs did not comply with required federal, state, and/or county laws, rules or standards in their use or disposal of Harmful Substances.

141.   The PRPs' wrongful conduct was done without Plaintiff's knowledge, authorization or permission.

142.   The PRPs' conduct has been prejudicial to Plaintiff.

143.   The Property has been diminished in value as a result of the PRPs' conduct.

144.   Plaintiff has been and continues to be damaged in an amount to be proven at trial, including but not limited to the diminution in the value of the Property and attorneys' fees and other expenses.

145.   The actions of the PRPs and their subordinates, employees, agents and all persons acting in concert with and/or by them with respect to their use or disposal of Harmful Substances on the Property were willful, wanton or were undertaken with an entire want of care that would raise the presumption of a conscious indifference to the consequences.   Plaintiff is thereby entitled to recover punitive damages.

## COUNT XII
## TRESPASS
### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

146.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 145 of this Complaint.

147.   The solid and/or hazardous waste intentionally discarded or released by PRPs at the Property wrongfully remains on the Property.

148.   PRPs have failed to remove the solid and/or hazardous waste on the Property.

149.   The presence of solid and/or hazardous waste on the Property is a continuing trespass.

150.   As a result, Plaintiff has sustained damages.

151.   Plaintiff did not authorize or permit Shaw to remain on the Property after the Lease terminated.

152.   Shaw intentionally, recklessly or negligently trespassed on Plaintiff's Property by remaining in possession of all or some portion of the Property after the Lease terminated.

153.   Plaintiff is entitled to judgment against the Shaw for general and special damages caused by said trespass in amounts to be proved at trial.

154.   The actions of PRPs and/or Shaw were malicious, outrageous, intentional and in conscious disregard of Plaintiff's rights and warrant an award of punitive damages.

## COUNT XIII
## NEGLIGENCE
### (as to Defendants Jacobs, Nichols, Fujikami, Kalhoefer and Century 21)

155.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 154 of this Complaint.

156.   Defendants Kalhoefer and Century 21 owed Plaintiff a duty to advise Plaintiff to conduct an ESA on the Property.

157.   Defendants Kalhoefer and Century 21 breached that duty when they failed to advise Plaintiff to conduct an ESA on the Property.

158.   Defendants Jacobs, Nichols, Fujikami, Kalhoefer and Century 21 owed Plaintiff a duty to properly clean up the Property before he purchased it or in the alternative to notify him that that the Property was not clean.

159.   Defendants Jacobs, Nichols, Fujikami, Kalhoefer and Century 21 breached that duty when they failed to properly clean up the Property and failed to notify Plaintiff that the Property was not clean.

160.   As a result, Plaintiff has sustained damages.

161.   The actions of Defendants Kalhoefer and Century 21 were malicious, outrageous, intentional and in conscious disregard of Plaintiffs' rights and warrant an award of punitive damages against PRPs.

## COUNT XIV
## NUISANCE
### (as to Defendants Jacobs, Nichols, Shaw, A&A, Chung, Kapolei Auto, Giordano, Ivory Transport, Hawk Transport and Coluccio)

162.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 161 of this Complaint.

163.   The presence of solid and hazardous waste at the Property caused by the PRPs constitutes a nuisance interfering with Plaintiff's use and enjoyment of his Property.

164.   The operation of an open dump and/or solid waste management system in violation of Haw. Rev. Stat. 342H-30(a) and (b) by Shaw, Giordano, Kapolei Auto and/or Ivory Transport constitutes a nuisance interfering with the use and enjoyment by Plaintiff of his Property

165.   The deposit of more than one cubic yard of solid waste at the Property by Shaw, Giordano, Kapolei Auto, Ivory Transport, and Coluccio in violation of Haw. Rev. Stat. 342H-30(c) constitutes a nuisance interfering with the use and enjoyment by Plaintiff of his Property.

166.   As a result, Plaintiff has sustained damages.

167.   The PRPs' actions were malicious, outrageous, intentional and in conscious disregard of Plaintiffs' rights and warrant an award of punitive damages against PRPs.

### COUNT XV
### FRAUD
### (as to Defendants Jacobs, Nichols, Fujikami, Kalhoefer and Century 21)

168.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 167 of this Complaint.

169.   Defendants Jacobs, Nichols, Fujikami, Kalhoefer and Century 21 falsely represented to Plaintiff that the removal of solid and/or hazardous waste from the Property was complete, when it was not.

170.   Defendants Jacobs and Nichols falsely represented that there were no substances, materials or products which may be an environmental hazard and that there was no filled land on the Property.

171.   The foregoing false representations were fraudulent as against Plaintiff, Plaintiff reasonably relied on the representations and as a result, Plaintiff has sustained damages.

172.   The actions of Jacobs, Nichols, Fujikami, Kalhoefer and Centur 21 were malicious, outrageous, intentional and in conscious disregard of Plaintiffs' rights and warrant an award of punitive damages.

173.   By virtue of their representations, acts and omissions, Defendants Jacobs, Nicols, Fujikami, Kalhoefer and Century 21 fraudulently concealed Plaintiff's claim for fraud pursuant to Haw. Rev. Stat. § 657-20.

## COUNT XVI
## NEGLIGENT MISREPRESENTATION
### (as to Defendants Jacobs, Nichols, Fujikami, Kalhoefer and Century 21)

174.   Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 173 of this Complaint.

175.   The aforementioned representations, failure to disclose information, acts and omissions by Defendants Jacobs, Nichols, Fujikami, Kalhoefer and Century 21 constitute actionable negligent misrepresentations.

176.   Plaintiff reasonably relied on the representations and as a result, Plaintiff has sustained damages.

177.   The PRPs' actions were malicious, outrageous, intentional and in conscious disregard of Plaintiffs' rights and warrant an award of punitive damages against PRPs.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for the following relief:

(1)   For judgment in favor of Plaintiff on each and every claim.

(2)   For judgment against each Defendant jointly and severally on each and every claim made against that Defendant.

(3)   For reimbursement.

(4)   For cost recovery.

(5)   For contribution.

(6)   For indemnification.

(7)   For declaratory order and judgment determining that Defendants are liable as a matter of law.

(8)   For an award of compensatory damages in an amount to be proven at trial.

(9)   For an award of punitive damages.

(10)   For fees and costs.

(11)   For such other and further relief as this Court may deem just and proper.

DATED: Honolulu, Hawai'i, May 12, 2010.

LISA A. BAIL
CARLY MINNER-COLE

Attorneys for Plaintiff
PETER K. TERUYA